## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHIGH VALLEY 1 LLC SUCCESSOR BY ASSIGNMENT TO WINDSTREAM CAPITAL LLC, SUCCESSOR BY ASSIGNMENT TO THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT SUCCESSOR BY ASSIGNMENT TO M&T REALTY CAPITAL CORPORATION, | : : : : : : : : : | No. 5:24-cv-02709-JFL<br><br>Honorable Joseph F. Leeson, Jr., J. |
| Plaintiff, | : : | |
| v. | : : | |
| SAUCON TRUST, U/T/A DATED OCTOBER 1, 2007, | : : : : | |
| Defendant. | : : : | |

## MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'SFIRST AMENDED COMPLAINTPURSUANT TO
## FED. R. CIV. P. 12(b)(1) OR IN THE ALTERNATIVE FED. R. CIV. P. 12(b)(6)

**AND NOW**, comes Defendant, Saucon Trust, U/T/A dated October 1, 2007 ( "Defendant" or the "Trust"), by and through its Counsel, Norris McLaughlin, P.A., and submits this Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, Federal Rule of Civil Procedure 12(b)(6).

In support, Defendant states as follows:

## I.   **Preliminary Statement**

Windstream Capital, LLC ("Windstream") confessed judgment against Defendant on November 13, 2023, related to the Mortgage subject to the within Complaint in the amount of $18,133,058.11 (the "Northampton County Judgment"). See Ex. A.[1] This is completely contrary to Plaintiff's statement in paragraph 41 of its First Amended Complaint which alleges "[n]o prior judgment has been entered on said Note or Mortgage in any jurisdiction." See Am. Compl. ¶ 41 On May 28, 2024, the Northampton County Court of Common Pleas struck the Northampton County Judgment as if it had never been entered. Id. Undeterred by this judicial rebuke, Plaintiff has now assigned the Mortgage to the Plaintiff herein, seemingly to create the appearance of diversity jurisdiction in order to litigate a local mortgage foreclosure action in a different venue. However, Plaintiff, which purports to be a Delaware limited liability company doing business in Florida, has completely failed to allege facts to support its claim for diversity jurisdiction.  In addition, there is no indication that Plaintiff actually conducts any business the State of Florida, which is not surprising given that it seems as though it was formed solely for the purpose of filing this litigation in Pennsylvania. See Am. Compl. ¶ 1; Ex. B. Additionally, Plaintiff cannot assert money damages in what is fundamentally an in rem action.

This Court must recognize this for what it is: a sloppy attempt to forum shop by a party whose sole purpose is to do business in Pennsylvania. Plaintiff's claims should not be entertained,

---

[1] The Trust requests this Court take judicial notice of this court filing along with the other referenced exhibits. A court may consider the related state court proceedings as matters subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (holding a district court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case").

and this Court should dismiss this Complaint or exercise abstention under the Colorado River doctrine.

## II.   **Factual and Procedural Background**

Plaintiff's Amended Complaint against Defendant is fundamentally flawed and this Court lacks subject matter jurisdiction. Plaintiff, successor by assignment to Windstream, which in turn was successor to the Department of Housing and Urban Development ("HUD"), has not properly established its claims should be heard by this Court.

Plaintiff is allegedly a Delaware-registered limited liability company with an alleged place of business in Coral Gables, Florida. Am. Compl. at ¶ 1. A search of Florida's Department of State records, however, shows no legal registration for Plaintiff, indicating it does not actually, legitimately, and lawfully conduct business in Florida.[2] A true and correct copy of Florida's Department of State Records for Plaintiff is attached hereto as Exhibit B. See Ex. B. Additionally, Plaintiff has failed to disclose the citizenship of its members, which is critical for establishing diversity jurisdiction as mandated by 28 U.S.C. § 1332. Am. Compl. at ¶ 1. The failure to plead the citizenship of its members undermines the Plaintiff's claim of complete diversity, which is required for federal subject matter jurisdiction.

The loan in question, originally provided by M&T Realty Capital Corporation, was for the principal amount of $19,462,800.00 and secured by a mortgage on the property located at 1050 Main Street, Unit # 1, Hellertown, Pennsylvania. Am. Compl. ¶¶ 11-12.

---

[2] Defendant requests this Court take judicial notice of this filing. A court may consider the related state court proceedings as matters subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (holding a district court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case").

Confessed judgments were entered against the property in Northampton County. Ex. C. However, the Trust successfully had the Northampton County Judgment stricken, as evidenced by the orders from Northampton County. Ex. A. Despite this order, Windstream assigned the mortgages to the newly created entity, Plaintiff, a Delaware LLC that questionably claims to conduct business in Florida. Am. Compl. ¶ 1; Ex. B. Notably, Plaintiff was not formed until February 21, 2024, which happens to be the exact day that oral argument was held with respect to the Northampton County Judgment. Windstream Cap. LLC v. Saucon Trust, C-48-CV-2023-09221 (2023), https://web.northamptoncounty.org/CountySuite.EServices/CaseDetails/Index/615609; Ex. A; Ex. D.

Plaintiff's assertion that it has a place of business in Florida is contradicted by the lack of registration with the Florida Department of State. See Ex. B. Furthermore, Plaintiff has not sufficiently identified its members, a necessary step to establish citizenship and, by extension, complete diversity. Am. Compl. at ¶ 3.

Upon information and belief, Plaintiff is merely an alter ego of Windstream, sharing the same corporate owners. See Ex. E (public filing showing Plaintiff is partially controlled by Windstream). Upon information and belief, this assignment was likely made to obscure true ownership and create diversity jurisdiction, further eroding Plaintiff's credibility. See Am. Compl. ¶ 1. Given the similarities in ownership and control, Plaintiff's claims are dubious at best and seem designed to circumvent proper legal scrutiny. This further confirms that due to Plaintiff's attempt to forum shop this court should exercise the abstention doctrine.

Defendant has demonstrated good faith by successfully challenging and having the confessed judgments stricken. Plaintiff's continued failure to accurately present the case's facts

and their misleading representation of business operations in Florida underscore the baseless nature of their claims.

For the reasons set forth herein, the Trust now moves to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) or in the alternative FED. R. Civ. P. 12(b)(6).

**III.   Argument**

    ***a.   The Court Lacks Subject Matter Jurisdiction and, Therefore, the Court Must Dismiss the Amended Complaint.***

Plaintiff fails to establish that this Court is vested with subject matter jurisdiction. The Amended Complaint must be dismissed. Plaintiff has not demonstrated subject matter jurisdiction on two (2) grounds: (i) Plaintiff has not demonstrated diversity jurisdiction; and (ii) Plaintiff has not shown it has standing to assert these claims. As such this Court should dismiss the Amended Complaint in full.

    *i.   Plaintiff Has Not Shown Complete Diversity of Citizenship*

There is not a shred of evidence to establish diversity of citizenship between Plaintiff and the Trust. Consequently, subject matter jurisdiction has not been demonstrated and the Amended Complaint must be dismissed.

The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, grants federal district courts original jurisdiction over all civil actions "between citizens of different states" where the amount in controversy exceeds $75,000. Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89, (2005); Gentry v. Sikorsky Aircraft Corp., 383 F. Supp. 3d 442, 458 (E.D. Pa. 2019). For over two hundred years, this statute has been interpreted to require "complete diversity between all plaintiffs and all defendants." Campbell v. Triangle Corp., 336 F. Supp. 1002, 1004 (E.D. Pa. 1972). This means that, unless there is another basis for jurisdiction, no plaintiff can be a citizen of the same state as any defendant. Id.

The party asserting diversity jurisdiction bears the burden of proof. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Samuel–Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir.2004). A party generally meets this burden by proving diversity of citizenship by a preponderance of the evidence. McNutt, 298 U.S. at 189. A preponderance of evidence standard means it is more likely than not a party is domiciled in a certain state. See Doe v. The Trustees of the Univ. of Pennsylvania, 270 F. Supp. 3d 799, 818-19 (E.D. Pa. 2017). One can establish domicile by demonstrating an intent to remain in a state, supported by various types of evidence. Graham v. I.N.S., 998 F.2d 194, 195 (3d Cir. 1993). This evidence includes declarations of intent, exercising political rights (such as voting), paying personal taxes, owning or renting a residence, having a place of business, maintaining brokerage and bank accounts, the location of one's spouse and family, membership in unions and other organizations, and possessing a driver's license and vehicle registration in that state. Dadzie on Behalf of Int'l Kal-Sahara Corp. v. Leslie, 550 F. Supp. 77, 79 n.3 (E.D. Pa. 1982).

The citizenship of an LLC is determined by the citizenship of its members. Johnson v. SmithKline Beecham Corp., 853 F. Supp. 2d 487, 490 (E.D. Pa. 2012), aff'd, 724 F.3d 337 (3d Cir. 2013). For complete diversity to exist, all members of the LLC must be diverse from all parties on the opposing side. Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418-19 (3d Cir. 2010).

In Zambelli Fireworks Mfg. Co., the Third Circuit addressed this issue. Zambelli was a Pennsylvania corporation, making it a citizen of Pennsylvania. Id. Wood was from Florida, making him a Florida citizen. Id. Pyrotecnico, a defendant in the case, was a Nevada LLC, but its single member was Pyrotecnico of Louisiana, LLC. Id. The managing member of Pyrotecnico of Louisiana, Stephen Vitale, was a resident of Pennsylvania. Id.

Since Pyrotecnico was a citizen of Pennsylvania due to Stephen Vitale's residency, it was not diverse from Zambelli, which was also a citizen of Pennsylvania. Id. Therefore, complete diversity, required for federal jurisdiction, was lacking. As a result, the court did not have the authority to hear the case, and all parties agreed that the lawsuit could not proceed with Pyrotecnico involved. Id.

The Third Circuit has criticized courts in this district for not definitively ascertaining the membership of an LLC through an operating agreement. Sync Labs LLC v. Fusion-Mfg., 838 F. App'x 665, 668 n.3 (3d Cir. 2020). In Sync Labs LLC, the Third Circuit admonished the United States District Court for the District of New Jersey for failing to obtain a document that definitively listed a party to the action's members.  838 F. App'x at 668 n.3.  It was discovered that one member's presence defeated subject matter jurisdiction. Id. This issue was resolved only when Sync Labs was dismissed from the case. Id. Nonetheless, the Third Circuit has emphasized that an operating agreement is essential to ascertain membership and ensure that subject matter jurisdiction is properly established. Id.

Here, Plaintiff has not pled the citizenship of its members with the particularity necessary that the Third Circuit demands with the requisite operating agreements. Compare Sync Labs LLC, 838 F. App'x at 668 n.3; with Am. Compl. ¶¶ 1-5. As a limited liability company, Plaintiff is a citizen of each state of its members' domicile. Plaintiff has merely alleged that: "[Plaintiff] is a Delaware registered limited liability company with a place of business at 2100 Ponce de Leon Blvd, Suite 720, Coral Gables, FL 33134." Id. at ¶ 1. While Plaintiff in its Amended Complaint alleges that it is composed of Delaware LLCs comprised of citizens of New York, Texas, and Florida, Plaintiff has not provided sufficient proof to establish complete diversity of citizenship. Id. ¶¶ 1-5

Here, the Trust is a Pennsylvania citizen. However, as held in <u>Zambelli</u>, the Third Circuit held where one defendant LLC was a citizen of Pennsylvania (because of its members), it is not diverse from the plaintiff, which is also a Pennsylvania citizen. 592 F.3d at 418-19.

Similarly, Plaintiff's vague assertion of being a Delaware LLC with a business address in Florida is wholly insufficient. <u>Am. Compl.</u> ¶¶ 1-5. Here, the Plaintiff has not provided the citizenship of its members with the level of detail required by the Third Circuit, nor has it submitted the necessary operating agreements to support this information. <u>Compare id.</u>; <u>with</u>, <u>Sync Labs LLC</u>, 838 F. App'x at 668 n.3. Furthermore, Florida shows no registration for Plaintiff despite its claim to operate in Florida. <u>See</u> Ex. B.

Plaintiff's failure to properly plead the citizenship of its members not only undermines their claim but also calls into question Plaintiff's credibility. This Court cannot and should not accept such deficient and misleading allegations. The Trust urges the court to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or at the very least require Plaintiff disclose the domiciles of its members with particularity via the requisite operating agreements. <u>Sync Labs LLC</u>, 838 F. App'x at 668 n.3.

As such, this Court lacks subject matter jurisdiction for Plaintiff's controversy. As a result, the Amended Complaint must be dismissed.

ii.     *Plaintiff Lacks Standing to Assert its Claims Because the Note was Improperly Assigned*

The note was not properly assigned to various parties in a myriad of ways and as such standing does not exist.

A plaintiff must show a valid assignment to assert a claim. <u>Community Medical Center</u>, 143 Fed.Appx 433, 436 (3d.Cir.2005). Where a plaintiff is not assigned a right in an assignment

agreement it cannot assert such a right as a claim as the plaintiff lacks standing. <u>CSB-Sys. Int'l Inc.</u>
<u>v. SAP Am., Inc.</u>, No. CIV.A. 10-2156, 2012 WL 1521321 at * 2, 4 (E.D. Pa. Apr. 30, 2012).
In <u>CSB-Sys. Int'l Inc.</u>, the plaintiff received an assignment agreement dated March 29, 2010,
covering all infringement claims occurring on or after that date. 2012 WL 1521321 at * 4.
Subsequently, the <u>CSB-Sys. Int'l Inc.</u> plaintiff asserted claims against the defendant for
infringement that occurred before March 29, 2010. <u>Id.</u> The Court held that "[p]laintiff
unequivocally had standing to bring the instant lawsuit in May 2010, and has standing to seek
damages for any infringement occurring from March 29, 2010, onward it has no standing to seek
redress for infringement occurring prior to that date." <u>Id.</u> This establishes that a plaintiff may only
assert claims that were validly assigned to them. <u>Id.</u>

1. <u>HUD improperly assigned the note to Windstream  by failing to include certain documents</u>

HUD improperly assigned the note to Windstream and as such Plaintiff lacks standing.  "A
motion to dismiss for want of standing is also properly brought pursuant to [Federal Rule of Civil
Procedure] 12(b)(1), because standing is a jurisdictional matter." <u>Ballentine v. United States</u>, 486
F.3d 806, 810 (3d Cir.2007). On a motion to dismiss for lack of standing, the plaintiff bears the
burden of establishing standing. <u>Id.</u>

When HUD assigned the mortgage and related documents to Windstream, it improperly
assigned the mortgage to Windstream because HUD did not include the Description of 1050 Main
Street that was included in the prior assignment of mortgage between M & T Realty Capital
Corporation to HUD. <u>Compare</u> Am. Compl. Ex. G; <u>with</u> Am. Compl. Ex. H.   Plaintiff was
subsequently assigned Windstream's rights, which were improperly assigned by HUD because it
failed to include the Description of 1050 Main Street. Curiously, the Description of 1050 Main
Street is included in the assignment to Windstream to Plaintiff.  <u>Am. Compl.</u> Ex.  I. This is

analogous to CSB-Sys. Int'l Inc., where this court held a plaintiff could not state a claim for claims that were not properly assigned to it. 2012 WL 1521321 at * 4. Similarly, Plaintiff here was not properly assigned any right due to the improper assignment from HUD to Windstream. As such, Plaintiff lacks standing to assert its claims.

2.  The assignment from Windstream to Plaintiff is invalid

The assignment between Windstream and Plaintiff is invalid. The loan assignment agreement between HUD and Windstream, which governs such assignments, provides that any post-sale assignments must fulfill specific conditions: to be

> After the sale, assignment, and transfer of the Mortgage Loan(s) to Purchaser, Purchaser may assign this Agreement, in whole or in part (including the rights under this Section), provided that such assignment is in writing, and such assignment expressly states that: (1) the assignee(s) assumes any and all of Purchaser's liabilities and obligations under this Agreement that arise or are to be performed after the Closing Date; and (2) both Purchaser and the assignee(s) shall each remain jointly and severally liable to HUD for the failure of either Purchaser or the assignee(s) to fully comply with any such liabilities and obligations. Any assignment or attempted assignment in violation of the foregoing shall be void and of no effect. Upon execution, Purchaser and the assignee(s) shall promptly provide HUD with a copy of any such assignment.

See generally, HUD MultiUnit Foreclosure Loan Agreements (hereinafter referred to as "HUD Foreclosure Agreements"). Plaintiff has no right to bring claims where an assignment is non-existent. The assignment between Windstream and Plaintiff fails to meet these requirements and, therefore, said assignment is void. Community Medical Center, 143 Fed.Appx. at 436. There is no evidence that the assignment includes a written statement of the assignee's assumption of liabilities and obligations, nor that both parties remain jointly and severally liable to HUD. See Am. Compl. Ex. I. Furthermore, there is no indication that HUD was notified of the assignment, as mandated. See id. Therefore, this assignment is void and without legal effect.

3.  The assignment is invalid because there is no plan of action

The assignment from Windstream to Plaintiff is invalid because there is no plan of action for the residents. See Am. Compl. Ex. I. The actions of Plaintiff and Windstream violate the requirements set forth in the loan assignment agreement regarding the transfer and displacement of residents. Specifically, the agreement stipulates:

> With respect to any Mortgage loan secured by a healthcare facility, the Purchaser and its successors and assigns agree not to transfer or otherwise displace residents of the facility without adequate relocation of the residents to an appropriate facility or other settings in terms of quality and services, taking into consideration the needs and choice expressed by each resident and/or the resident's Attorney-in-Fact or Health Care Agent or proxy. The Purchaser and its successors and assign agree resident transfers or relocations will comply with applicable federal, state, and local law, regulations and guidelines. The Purchaser and its successors and assigns further agree to make this restriction regarding transfer displacement and relocation a condition of any foreclosure sale or subsequent loan sale. The Purchaser and its successors and assigns shall require the Mortgagor to agree to this restriction as part of any Triggering Event.

See HUD Foreclosure Agreements. In this case, there is no proposed plan of action for the transfer or displacement of residents. See Am. Compl. Ex. I.  Plaintiff merely intends to sell the property without considering the relocation needs and choices of the residents. See id. This lack of a plan directly contravenes the agreement's mandate that adequate relocation must be ensured, and that such relocations comply with all applicable laws and guidelines. See id. Therefore, their actions are not in compliance with the agreement and thus any assignment is invalid rendering Plaintiff without standing.

4.  <u>The assignment to Windstream was invalid because Windstream failed to meet the bidder qualification requirements.</u>

The certifications and qualifications of the initial purchaser, Windstream, are not true, accurate, or correct in all respects as required by the Loan Assignment Agreement. Specifically, a loan assignment agreement provides that:

> The certifications, representations, and warranties made by Purchaser in the qualification statement submitted by Purchaser for purposes of qualifying as a 'qualified bidder' in connection with the Sale are true, accurate, and correct in all respects.
>
> . . . .
>
> . . . .
>
> . . . .
>
> . . . .
>
> Purchaser either is licensed to own and service the Mortgage Loans or, as of the Closing Date, has hired an entity that is licensed to service the Mortgage Loans.

The Bidder Qualification Statement, attached hereto as Exhibit F, however, clearly stipulates:

> Purchaser is bidding for and will purchase the Mortgage Loans for its own account and not for or with a view toward resale (in whole or in part) in a 'distribution' within the meaning of the Act, and Purchaser's ownership and intended use and disposition of the Mortgage Loans will comply fully with all applicable federal and state laws, regulations, and requirements, including, without limitation, any and all laws and/or restrictions imposed on resale of the Mortgage Loans by federal and state securities or Blue Sky laws, rules, regulations or requirements. Purchaser represents and warrants that it will cause any subsequent purchaser, assign, owner (including any beneficial interest owner) to adhere to this paragraph E for a term of not less than five (5) years from the date the sale of the Mortgage Loan closes.

<u>See</u> Ex. F. Here, it is evident that Windstream, the initial purchaser, has not fulfilled these requirements. Plaintiff has not alleged that either Windstream or Plaintiff is licensed to own and

service mortgage loans or has hired an entity licensed to service mortgage loans. See Am. Compl. This failure to meet the qualifications and certifications as required invalidates the assignment and renders it non-compliant with the loan assignment agreement.

> **b.** **Assuming Arguendo, that this Court has Subject Matter Jurisdiction, Plaintiff Fails to State a Claim for Which Relief May be Granted.**

For argument's sake, assuming Plaintiff has established subject matter jurisdiction, this Court should dismiss the Amended Complaint for failure to state a claim for which relief may be granted.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Although this rule doesn't require detailed factual allegations, it does require more than just saying the defendant harmed the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint that only provides labels, conclusions, or a basic list of the elements of a cause of action, without further factual support, does not meet this standard and should be dismissed. Iqbal, 129 S. Ct. at 1949. To survive a motion to dismiss under Rule 12(b)(6), a complaint must include enough factual content to make the claim for relief plausible on its face. Twombly, 550 U.S. at 556.

Under the Twombly/Iqbal framework ("Twiqbal"), a court must first identify and ignore allegations that are just legal conclusions, which are not entitled to be assumed true. Iqbal, 129 S. Ct. at 1950. Legal conclusions disguised as factual allegations do not need to be accepted as true. Twombly, 550 U.S. at 556; Bright v. Westmoreland County, 380 F.3d 729, 735 (3rd Cir. 2004). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

Next, the court must consider the remaining well-pleaded factual allegations, assume they are true, and decide whether they plausibly suggest an entitlement to relief. Id. If the facts, even if true, are just as consistent with no liability as they are with liability, the claim must be dismissed. Id. at 1950.

Moreover, the court does not need to accept the complaint's bold assertions or legal conclusions when deciding a motion to dismiss. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3rd Cir. 1997). Courts routinely reject legal conclusions, unsupported conclusions, unwarranted inferences, and legal conclusions presented as factual allegations. Baraka v. McGreevy, 481 F.3d 187, 211 (3rd Cir. 2007).

For the reasons articulated herein, the Amended Complaint fails to state a plausible cause of action for which relief can be granted. Plaintiff cannot state certain claims: Plaintiff cannot state a claim for money damages because this is an in rem action. Even if this Court considers any of Plaintiff's claims this Court should exercise abstention under the Colorado River doctrine.

As a result, Defendant now moves for dismissal pursuant to FED. R. CIV. P. 12(b)(6).

i.   *Plaintiff Cannot State a Claim for Monetary Damages*

This is an in rem action, as such Plaintiff cannot assert a claim for money damages.

An action in mortgage foreclosure in Pennsylvania is strictly an in rem action. Pa. R.C.P. 1141; In re Thomas, 626 B.R. 793, 802 (Bankr. E.D. Pa. 2021). It is hornbook law that a mortgage foreclosure cannot be an action to collect amounts owed or collect a debt. In re Marchese, 605 B.R. 676, 692 (Bankr. E.D. Pa. 2019) ("foreclosure is strictly an in rem proceeding whose purpose is to determine if the plaintiff is entitled to subject the mortgaged property to judicial sale, not the entry of a judgment for money damages"); In re Randall, 358 B.R. 145, 157 (Bankr. E.D. Pa. 2006) ("An action in mortgage foreclosure is strictly an in rem proceeding, and the purpose of a judgment

in mortgage foreclosure is solely to effect [*sic*] a judicial sale of the mortgaged property.... A judgment in a mortgage foreclosure action is not a judgment for money damages and therefore cannot be 'an action to collect amounts owed' or 'an action to collect the debt'); In re Dangler, 75 B.R. 931, 935 (Bankr. E.D. Pa. 1987) ("A judgment in a mortgage foreclosure action is not a judgment for money damages and therefore cannot be 'an action to collect the debt'").

In re Randall, this United States Bankruptcy Court for the Eastern District of Pennsylvania held that a party could not assert Truth in Lending Act disclosure damage claims as counterclaims in a mortgage foreclosure action because it is an in rem action. 358 B.R. at 157. Here, Plaintiff has made the same error. The Amended Complaint seeks money damages totaling "judgment in the amount of $17,516,630.05, together with all costs, including reasonable attorneys' fees, and interest accrued through the date of judgment."). Am. Compl. ¶ 40.

Plaintiff's request for damages is nothing short of an attempt to take a second bite at the apple, and in doing so, Plaintiff seeks to swallow the entire orchard of apples disregarding case law in doing so. This is an in rem action, and Plaintiff cannot seek monetary damages, costs, attorneys' fees, or interest due to the nature of the proceeding. Such baseless claims for monetary damages must be dismissed outright, as they are fundamentally impermissible in this context. Plaintiff's overreach in this regard is both misguided and legally untenable.

    *ii.*    *This Court Must Exercise the Abstention Doctrine Under the Colorado River theory*

This Court should abstain from considering this case under the Colorado River doctrine. Colorado River abstention is properly considered under a 12(b)(6) motion. See Heritage Farms, Inc. v. Solebury Twp., 671 F.2d 743, 745 (3d Cir. 1982); Peet v. Bd. of Supervisors of New Hanover Twp., No. CV 21-2696, 2021 WL 5040358 at *1 n.2 (E.D. Pa. Oct. 29, 2021).

Under the <u>Colorado River</u> doctrine, a court weighs six (6) factors to determine whether abstention is proper: (1) in an in rem case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties. <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 818-19 (1976); <u>Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299 (3d Cir. 2009). No one single factor is dispositive. <u>Id.</u> However, here, all six (6) factors weigh heavily in favor of abstention under <u>Colorado River</u>.

1. <u>The Northampton County Court of Common Pleas first assumed jurisdiction over the property.</u>

In this <u>in rem</u> action, jurisdiction was first assumed by a state court pointing towards abstention. <u>Nationwide Mut. Fire Ins. Co.</u> 571 F.3d at 308. An action in mortgage foreclosure is strictly an <u>in rem</u> action. Pa. R.C.P. 1141; <u>In re Thomas</u>, 626 B.R. at 802.

Where a court suspects forum shopping this prong may be satisfied. <u>Gleason v. Firstrust Bank</u>, No. CV 20-4135, 2021 WL 1853424 at *1 (E.D. Pa. May 10, 2021) (explaining where forum shopping is suspected a court may abstain under <u>Colorado River</u>).

Plaintiff attempts to counter the first factor by arguing that "[t]he Northampton County Court did not make any determinations regarding the enforceability of the [l]oan other than evaluating the validity of the [w]arrant of [a]ttorney provision." <u>Am. Compl.</u> ¶ 34. This argument is entirely misguided. The determination of this factor is not contingent on whether the court made any rulings about the loan itself. Instead, it is about which court exercised jurisdiction first. <u>Nationwide Mut. Fire Ins. Co.</u> 571 F.3d at 308. Plaintiff and its alter ego, Windstream, implicitly acknowledged the state court's jurisdiction by filing the confession of judgment in the

Northampton County Court of Common Pleas. Ex. C. Windstream chose to exercise jurisdiction in the state court first, assuming Northampton County had jurisdiction. Id.

Following the holding of the Newtown court, the Northampton County Court of Common Pleas was the first to assume jurisdiction over the matter. Compare id.; with 316 F. Supp. 2d at 235. When actions are inextricably linked, they point towards abstention. Id. In this case, the confession of judgment arises from the mortgage note and related documents. See Ex. C. While it differs from a foreclosure, it originates from the Trust's alleged failure to fulfill certain duties under these documents. See id.; See also Newtown, 316 F. Supp. 2d 225, 235 (E.D. Pa. 2004).

Windstream's initial confession of judgment against the Trust on November 13, 2023. Ex. A. This jurisdiction continued when the Northampton County Court issued an order to open the judgment from November 13, 2023, and have it stricken on April 16, 2024. Id. This fact weighs heavily in favor of abstention, as the state court first exercised in rem jurisdiction over the property. Nationwide Mut. Fire Ins. Co., 571 F.3d at 308.

This is further underscored by the fact that Windstream is a member of the sole member controlling Plaintiff. Ex. E. This is merely an attempt to forum shop after Windstream waived any claim to diversity jurisdiction by commencing litigation in Pennsylvania state courts. Compare id. with Gleason, 2021 WL 1853424 at *1.

    2.    There is no forum selection clause present, favoring abstention.

The second Colorado River factor considers the inconvenience of the federal forum, with significant emphasis on the presence or absence of a forum selection clause. See Lincoln Square 1766 Assocs., LLC v. Great Am. Ins. Co., No. CV 20-4003, 2020 WL 6262188 at * 4 (E.D. Pa. Oct. 23, 2020). When determining this factor, courts primarily examine whether a forum selection clause designates jurisdiction to a federal court. Lincoln Square 1766 Assocs., No. CV 20-4003,

2020 WL 6262188 at * 4. In <u>Lincoln Square 1766 Associates, LLC</u>, this Court found that the second factor did not favor abstention because the contract included a forum selection clause permitting federal court jurisdiction. 2020 WL 6262188 at * 4. However, in the present case, the relevant documents do not contain such a clause that vests this Court with jurisdiction. See <u>Am. Compl.</u> Consequently, this factor weighs in favor of abstention, as the absence of a forum selection clause supports the argument that the federal forum may be inconvenient.

    3.   <u>There is a desirability to avoid piecemeal litigation.</u>

    The third <u>Colorado River</u> factor weighs in favor of abstention due to the desire to avoid piecemeal litigation. <u>Ryan v. Johnson</u>, 115 F.3d 193, 197 (3d Cir. 1997). The avoidance of piecemeal Therefore, this factor is satisfied "when there is evidence of a strong federal policy that all claims should be tried in the state courts." <u>4431, Inc. v. Cincinnati Ins. Cos.</u>, 504 F. Supp. 3d 368, 379 (E.D. Pa. 2020), <u>aff'd sub nom. Wilson v. USI Ins. Serv. LLC</u>, 57 F.4th 131 (3d Cir. 2023).

    Other federal courts have found that there is a federal policy as described by the federal courts of this circuit for mortgage foreclosures to be tried in state courts. For example, in <u>MacIntyre v. JP Morgan Chase Bank</u>, the US District Court of Colorado held that "any [federal] order regarding title to the subject property might interfere with a state court order regarding the same property." No. 12-CV-2586-WJM-MEH, 2015 WL 1311241 at *4 (D. Colo. Mar. 19, 2015), <u>judgment entered</u>, No. 12-CV-02586-WJM-MEH, 2015 WL 1332256 (D. Colo. Mar. 20, 2015), and <u>aff'd</u>, 644 F. App'x 806 (10th Cir. 2016). This highlights the concern of federal courts interfering with exercising jurisdiction where state court proceedings occurred related to property, which is especially relevant once a foreclosure proceeding has advanced to judgment. <u>Id.</u> This aligns with the principle that state courts are generally more appropriate venues for handling

mortgage foreclosures to avoid inconsistent results and conflicting judgments. Id. Here, there is a federal policy to tie mortgage foreclosure cases to state courts.

4.   The State court first obtained jurisdiction

The fourth Colorado River factor considers whether a state court or a federal court first exercised jurisdiction. U.S. Claims, Inc. v. Smolar, 574 F. Supp. 2d 487 (E.D. Pa. 2008). Here, the first court to obtain jurisdiction was the Northampton County Court of Common Pleas when Windstream filed its complaint and confessed judgment on November 13, 2024. Ex. A. The Northampton County Court of Common Pleas then opened and struck the judgment on May 28, 2024. Id. It was nearly seven (7) months later on June 20, 2024, Plaintiff commenced this action. See Dkt. 1.

Here, the fourth factor clearly weighs in favor of abstention.

5.   State law controls this matter

The fifth Colorado River factor examines whether federal or state law governs the matter at hand. Greenwood Racing Inc. v. Am. Guarantee & Liab. Ins. Co., 568 F. Supp. 3d 526 (E.D. Pa. 2021) When state law predominates, the court is more inclined to abstain. 4431, Inc., 504 F. Supp. 3d at 379. In this case, the action concerns a mortgage foreclosure, which is governed by Pennsylvania law. In re Randall, 358 B.R. at 157. Therefore, this factor clearly supports abstention.

6.   The state court will protect the interests of the parties

The final Colorado River factor strongly supports abstention because the Northampton County Court of Common Pleas is more than capable of adequately protecting the interests of the parties involved. This factor is not satisfied when the state forum is simply adequate; it must be demonstrated that the state court exceeds the standards of inadequacy. Ryan, 115 F.3d at 200. Both this Court and the Third Circuit have consistently recognized the competency and superior

adequacy of Pennsylvania courts. Gass v. Cnty. of Allegheny, PA., 371 F.3d 134, 141 (3d Cir. 2004); Kowal v. Smith, No. 2: 18-CV-0524, 2020 WL 4368361 (W.D. Pa. July 30, 2020) (describing Common Pleas decision as well reasoned).

Here, the state court not only meets but surpasses the required standards of adequacy based on the well-reasoned decision rendered by the Northampton County Court of Common Pleas. Ex. A. This final factor decisively weighs in favor of abstention. Consequently, all six factors strongly support abstention under the Colorado River doctrine. Therefore, this Court should abstain from hearing Plaintiff's case.

### IV.    Conclusion

As Plaintiff has failed to demonstrate subject matter jurisdiction by not disclosing the citizenship of its members, and alternatively failed to state a claim for which relief can be granted, this Court should dismiss the Plaintiff's First Amended Complaint in its entirety.

Respectfully submitted,

**NORRIS MCLAUGHLIN, P.A.**

Dated: August 7, 2024

/s/ Rebecca J. Price
Rebecca J. Price, Esquire
Attorney I.D. No. 206182
515 Hamilton Street, Suite 502
Allentown, PA 18101
Phone: (610) 391-1800
rprice@norris-law.com
*Attorneys for Defendant*