IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | : : : : : : : : : : | CIVIL ACTION NO. 24-2627 |
| Plaintiff | : | |
| v. | : : | |
| WHITEHALL FIDUCIARY LLC, as TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007 | : : : | |
| Defendant | | |
| LEHIGH VALLEY 1, LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | : : : : : : : : : : | CIVIL ACTION NO. 24-2709 |
| Plaintiff | : | |
| v. | : : | |
| SAUCON TRUST U/T/A DATED OCTOBER 1, 2007 | : : | |
| Defendant | : | |

**REPLY BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENAS ISSUED TO WHITEHALL MANOR, INC., SAUCON VALLEY MANOR, INC., BROOKSIDE COMMERCIAL CONSTRUCTION CO., INC., PENNSYLVANIA VENTURE CAPITAL, INC., AND NIMITA KAPOOR ATIYEH OR ALTERNATIVELY FOR A PROTECTIVE ORDER**

In its response (ECF No. 139), Plaintiff Lehigh Valley 1, LLC ("Plaintiff") claims it needs the documents and information requested in five non-party subpoenas totaling 190 requests based on Defendants' alleged fraud. Plaintiff's Complaints, however, do not include any claim for fraud or even an allegation suggesting fraud. Plaintiff improperly attempts to expand the scope of discovery in these mortgage foreclosure actions to harass non-parties. The Court should grant the Non-Party Respondents' Motion to Quash or in the Alternative for a Protective Order and stop Plaintiff from continuing its fishing expedition into the financial affairs of numerous non-parties.

**I.     Plaintiff already has extensive information relating to the claims and issues in the case and the Properties.**

In response to the Motion to Quash or in the Alternative for a Protective Order, Plaintiff falsely claims that Respondents refused to produce any documents. (ECF No. 139 at pg. 10). In fact, non-parties Whitehall Manor, Inc. and Saucon Valley Manor, Inc. (the "Tenants") produced their lease agreements with the Defendant property owners and spreadsheets listing every rent payment made over the last five years.

In addition to producing the leases and rent payment information, the Tenants also permitted Plaintiff, Receiver, and their counsel to conduct inspections at the Properties on September 30, 2025 and October 1, 2025. As a result of these inspections, Plaintiff is well aware of the current status of the Properties.

Plaintiff also has numerous categories of documents it seeks from the Non-Party Respondents because the Defendants produced such documents in this case. For example, Defendants produced information related to the taxes and insurance policies related to the Properties.

In an effort to resolve this discovery dispute, Non-Party Respondents agree to provide the following documents relating to the status of the Properties.

1

The Tenants will produce:

- Documents sufficient to show the maintenance of the buildings located at the Properties during 2025;

- Documents sufficient to show the repairs of the buildings at the Properties during 2025; and

- Documents sufficient to show any capital improvements at the Properties from 2024 to 2025.

- Any management agreements relating to the Properties presently in effect;

- Documents sufficient to show the payments made to any management companies in 2025;

- Contracts with vendors that provide services relating to the upkeep and maintenance of the property in effect in 2025, including:

    - Sewer bills;

    - Water bills;

    - Repair or maintenance contracts; and

    - Contracts relating to construction at the Properties.

Non-Party Respondent Pennsylvania Venture Capital will produce a list of invoices and payments received from work performed at or related to the Properties in 2025.

Non-Party Respondent Brookside Commercial Construction will produce documents sufficient to show any capital improvements at the Properties from January 1, 2024 through the present.

Because these documents relate to 2025, the Non-Party Respondents will produce them on or before January 31, 2025 to allow for year-end accounting to be completed.

The documents the Non-Party Respondents will produce, along with the documents they have already produced and Plaintiff's inspection of the Properties have and will provide Plaintiff with the information it is entitled to that relates to the claims and defenses in this action.

## II.     Plaintiff downplays the scope of the Subpoenas.

Plaintiff claims the subpoenas "seek documents and information regarding the operation and finances of the personal care facilities located on the mortgaged properties." (ECF No. 139 at pg. 9). According to Plaintiff, the information requested "includes financial statements, tax returns, lease agreements, payment records, resident information, staffing records, maintenance and repair records, insurance policies, and related business documents." (*Id.*).

But these are only a handful of the 190 document requests served by Plaintiff across the five different subpoenas. In reality, each of the Non-Party Respondents has been burdened with an extensive number of requests seeking an expansive universe of documents irrelevant to the underlying claims and defenses.

The Subpoenas directed to Tenants Whitehall Manor, Inc. and Saucon Manor, Inc., for instance, require the production of forty-two (42) different categories of documents, each. These categories include, for example:

(i) information pertaining to former officers, directors, managers, members, and owners;
(ii) every lease, amendments, and agreements "from inception" of their respective businesses;
(iii) all financial records since 2021, including bank statements, tax and revenue information, expense and revenue information;
(iv) rent information, without temporal limitation, including any and all correspondence pertaining to rent payments with any person or entity, as well as information regarding deposits, transfers, and any other payment methodology;
(v) any information pertaining to financial transactions with undefined "related parties" and "related entities";
(vi) documents and information concerning the residency and/or occupancy of current and former clients, without temporal limitation, including any agreements and fee schedules;
(vii) all marketing materials used by Tenants to attract clients to their business, without temporal limitation;
(viii) any "notices of violations, deficiencies, or citations" ever received by the Tenants;
(ix) any permits, licenses, or regulatory approvals ever obtained by the Tenants;

3

  (x)  any communications with current or former clients, including their families, which may pertain to the financial condition of Tenants' businesses; and

  (xi)  all documents concerning or affecting the rates at which Tenants offer rent to clients.

(ECF No. 136-2, 5-7; ECF 136-3, 5-7).

  Non-party Brookside Commercial Construction Co., Inc., ("Brookside") received a subpoena demanding the production of fifty-two (52) unique categories of documents. Most of the documents requested concern Brookside's business or operations unrelated to the Properties, and unlimited in time. These expansive categories include, for example:

  (i)  All documents concerning current or former officers, directors, shareholders, or beneficial owners, without temporal limitation;

  (ii)  All information concerning licenses, bonds, or insurance policies ever obtained;

  (iii)  Any change orders, amendments, or modifications to any construction contracts ever entered into;

  (iv)  Any warranty documents or guarantees for any work ever performed;

  (v)  Any documents concerning how Brookside prices its services, including comparisons to any other entities who perform similar services;

  (vi)  All documents concerning Brookside's labor, material, overhead, as well as profit margins for its business;

  (vii)  All documents concerning any payments, including "checks, wire transfers, and electronic payments" ever received by Brookside;

  (viii)  All financial statements since 2018;

  (ix)  Any lien waivers or releases ever provided by Brookside;

  (x)  All project files, including plans, specifications, and drawings, for any services ever performed;

  (xi)  Any inspection reports, quality control documents, photographs, purchase orders, delivery tickets, or invoices for any services ever performed;

  (xii)  All documents relating to renovation services ever performed exceeding $10,000;

  (xiii)  All information relating to any emergency repairs, urgent work orders, or work performed that was ever disputed or subject to complaints by any clients;

  (xiv)  Documents related to any payment issues or collection efforts ever faced by Brookside;

  (xv)  All documents concerning the "quality or necessity of work" ever performed by Brookside; and

4

 (xvi) Any inspection or accident reports, safety records, or documents broadly "relating to compliance with prevailing wage requirements.

(ECF No. 136-4, 4-7).

  Non-party Pennsylvania Venture Capital, Inc. ("PVC"), for its part, received a subpoena demanding the production of thirty-five (35) separate categories of documents. The subpoena to PVC likewise sought documents unrelated to the Properties, Plaintiff, or Defendants. The information demanded includes, for example:

 (i) All organizational documents, including bylaws and operating agreements, as well as any information concerning former or current officers, directors, shareholders, or beneficial owners;

 (ii) Any amendments, modifications, or extensions to all management agreements ever entered into by PVC, including all documents relating to how PVC has ever structured its management fees;

 (iii) All documents relating to competitors' bids or any market analysis ever performed by PVC relating to their structuring of fee rates;

 (iv) Any and all financial statements since 2018;

 (v) All documents relating to PVC's internal staffing plans, organization charts, or personnel recommendations provided to any clients;

 (vi) All documents relating to PVC's internal efforts to improve operations, save costs, or improve efficiencies;

 (vii) Any documents provided to clients relating to regulatory compliance assistance;

 (viii) All PVC marketing plans or resident acquisition strategies throughout its history;

 (ix) Documents relating to any mortgage defaults or financial distress ever endured by PVC;

 (x) All documents concerning PVC's staff and contractors' licenses, certifications, or qualifications, as well as any documents relating to PVC's compliance with any or all industry standards for healthcare management.

(ECF No. 136-5, 4-6).

  Non-party Nimita Kapoor Atiyeh ("Atiyeh") received a subpoena in her individual capacity demanding the production of nineteen (19) separate categories of documents. In large part, these demands seek information regarding Atiyeh's business operations unrelated to the Properties, Defendants, or Plaintiff. For example, the subpoena to Atiyeh includes requests for:

5

- (i) Any formation documents pertaining to all businesses owned or controlled by Atiyeh that operate senior living facilities;
- (ii) Any documents which pertain to Atiyeh's licenses, qualifications, or certifications relating to the operation of any senior living facilities;
- (iii) All of financial statements, income statements, or tax returns related to any senior living facilities;
- (iv) All documentation relating to all of Atiyeh's business accounts since January 1, 2021;
- (v) Any documentations relating to lease agreements or negotiations with any property-owning trust, without a temporal restriction;
- (vi) All documents which pertain to any financial transactions with Abraham Atiyeh and/or entities controlled by Abraham Atiyeh, purportedly throughout history;
- (vii) Any documents related to financial arrangements between any tenant operators and any property owners;
- (viii) Any communications with Abraham Atiyeh regarding any lease amendments, ever; and
- (ix) All documents relating to any strategies Atiyeh ever had for "dealing with mortgage defaults."

(ECF No. 136-6, 4-6).

Plaintiff's five subpoenas totaling 190 requests go well beyond the scope of discovery in this mortgage foreclosure action.

### III. Argument

#### a. Plaintiff gets the basic legal standards for a motion to quash wrong.

Plaintiff claims the party moving to quash the subpoena "bears the burden of persuasion." (ECF 139 at pg. 11). Plaintiff misstates the standard.

"First, the subpoenaing party must demonstrate that its requests fall within the general scope of discovery defined in Rule 26(b)(1)." *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. 2016). To meet this requirement, the subpoenaing party must show the discovery it seeks "is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* Only if the discovery requested falls within the general scope of discovery does the burden shift to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena. *Id.*

6

> b. **Plaintiff fails to meet its burden to establish each of its 190 discovery requests to the 5 non-parties are relevant.**

Plaintiff does not address the entirety of the 190 discovery requests it served on the Non-Party Respondents, instead cherry-picking a handful of requests it argues are relevant. Even considering only the few requests Plaintiff identifies, Plaintiff asks the Court to take a broad view of discovery and allow it to obtain documents relating to (1) claims that are not in the pleadings, and (2) what Plaintiff is guessing the Defendants' affirmative defenses are based upon. Plaintiff's request is not supported by applicable law or the facts of this case.

Relevancy is governed by Federal Rule of Civil Procedure 26(b), which requires that discovery requests be "relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1); *Green*, 314 F.R.D. at 169. "[S]tandards for non-party discovery require a stronger showing of relevancy than for party discovery." *Zukoski v. Philadelphia Elec. Co.*, No. CIV. A. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994); *Rollstock, Inc. v. SupplyOne, Inc.,* No. 22-MC-20, 2022 WL 1443389, at *2 (E.D. Pa. May 6, 2022) (collecting cases). Additionally, Under Rule 45, a party serving a subpoena on a non-party must take reasonable steps to avoid imposing an undue burden or expense on the non-party subject to the subpoena. Fed. R. Civ. P. 45(d)(1).

Here, Plaintiff only brings two claims for mortgage foreclosure. Mortgage foreclosure proceedings are limited to "whether a default warrants subjecting the mortgaged property to judicial sale." *In re Thomas*, 626 B.R. 793, 802 (Bankr. E.D. Pa. 2021).

> i. **Plaintiff has no basis to seek documents or information related to fraud and alter ego claims that do not exist.**

Plaintiff spends a significant portion of its brief describing "secret lease amendments," "fraudulent transfers," "fraudulent scheme," "fraudulent lease amendments," "scheme to divert all income away from the property-owning Defendants," and "potential alter ego liability." (ECF No.

7

139 at pg. 6, 7, 8, 16-19). But none of these allegations appear in the Complaints or Amended Complaints, and Plaintiff does not assert claims for fraud or seek liability under an alter ego theory. The operative Complaints against the Defendants assert a single claim for mortgage foreclosure against each Defendant. Nothing more.

Plaintiff has no basis to seek documents or information related to fraud claims and alter ego claims that do not exist. *See* Fed. R. Civ. P. 26(b)(1) (discovery requests must be "relevant to any party's claim or defense and proportional to the needs of the case"). Accordingly, Plaintiff's request for documents related to alleged fraudulent lease amendments or alter ego theories of liability are outside the scope of discovery, and the Non-Party Respondents' Motion to Quash or in the Alternative for a Protective Order should be granted.

## ii. Plaintiff has no basis to seek documents or information about what Plaintiff is guessing Defendants' affirmative defenses are based upon.

Plaintiff tries to expand the scope of discovery by arguing the documents and information it seeks is related to Defendants' affirmative defenses. (ECF No. 139 at pg. 14-16). Plaintiff asserts that the Defendants asserted thirty-four affirmative defenses, "many of which directly implicate the financial performance and operations of the facilities located on the Properties." (ECF No. 139 at pg. 14). Again, Plaintiff offers no support for its assertion.

While Plaintiff would like to rely on Defendants' assertion of affirmative defenses, Plaintiff's brief makes evident that Plaintiff has no idea what the factual basis is for any of Defendants' affirmative defenses. For example, Plaintiff attempts to rely on Defendants' affirmative defense that any alleged default was due to the actions or inactions of third parties. (ECF No. 139 at pg. 15). Plaintiff argues "**If** Defendants contend that third parties – including the Respondents operating facilities on the Properties – caused or contributed to the defaults through their actions or failure to pay rent, the financial records of those Respondents are essential to

8

evaluating such claims." (*Id.*) (emphasis added).  Plaintiff's use of the word "if" is telling.  Plaintiff does not actually know the factual basis for any of Defendants' affirmative defenses.

To the extent Plaintiff seeks information relating to Defendants' affirmative defenses, Plaintiff should first seek discovery **from the Defendants**.  A typical litigation practice would be to serve interrogatories asking for the factual basis for each of the affirmative defenses.  Plaintiff cannot use its failure to conduct reasonable discovery as a means to serve 190 requests on five separate non-parties based on what Plaintiff **is guessing** that Defendants' affirmative defenses may be.

### iii.  Tenants' financial information is not relevant

Plaintiff claims it is entitled to the Tenants' financial information because this information will establish the Defendant Trusts' financial ability to cure defaults.  (ECF No. 139 at pg. 12-13). Plaintiff argues – again, without support – that a "central question in any foreclosure proceeding is whether the defendants have the financial ability to cure their defaults, bring their accounts current, pay taxes as they accrue, and abide by the terms of the mortgage including maintaining and preserving the collateral."  (ECF No. 139 at pg. 12-13).  Non-Party Respondents dispute this information is a "central question" related to the claims and defenses in the case.  A plaintiff in a mortgage foreclosure case may want this information to evaluate a settlement, but it is not relevant to establishing a mortgage foreclosure claim.

Even assuming Plaintiff's unsupported position is correct, information regarding Defendants' ability to cure any alleged defaults *is within the possession of Defendants, not third-parties*.

9

### iv. Non-Party Respondents will produce documents relating to the condition of the Properties.

Plaintiff claims the value and condition of the collateral "is directly relevant to these foreclosure actions" and records of maintenance, repairs, capital improvements, and regulatory compliance "are all pertinent to understanding the current state and condition of the Plaintiff's collateral, and whether there are additional defaults of the mortgages." (ECF No. 139 at pg. 13-14).

The Tenants will produce maintenance records, repair information, and documents relating to capital improvements.

### c. Some of the documents and information sought by Plaintiff are protected by HIPAA.

Once again, Plaintiff makes an argument without any legal support. This time, Plaintiff contends "HIPAA is not applicable to the entities in this matter." (ECF No. 139 at pg. 23).

Contrary to Plaintiff's position, the documents sought are protected by HIPAA. As explained in Non-Party Respondents' Motion, the subpoenas to the Tenants request "All resident agreements and fee schedules." Producing this information would mean identifying every patient for whom the Tenants provide care, disclosing the type and/or level of care necessary for such patients, and detailing how much each patient is charged. These documents contain protected health information as defined by 45 C.F.R. § 160.103.

Additionally, when Tenants raised HIPAA as an objection to the Subpoenas, Plaintiff did not meet and confer. Instead, Plaintiff demanded compliance with the Subpoenas. (*See* ECF No. 136-12).

Regardless, HIPAA permits disclosure of protected health information under limited circumstances. *See* 45 C.F.R. 164.512(e). To the extent the Court finds Plaintiff's requests that seek protected health information are relevant, which Non-Party Respondents dispute, then the

10

Non-Party Respondents respectfully request that the Court enter an Order specifically identifying the documents to be produced and allowing Non-Party Respondents to redact any identifying information or, in the alternative, provide summary de-identified information.

**IV.     Plaintiff's inappropriate attempt to use its response as a motion to compel fails.**

Instead of filing a separate motion, Plaintiff attempts to assert a demand to compel documents in Plaintiff's response to the Non-Party Respondents' Motion to Quash or in the Alternative for a Protective Order.

As an initial matter, Plaintiff's request is improper because Plaintiff ignored the Court's requirement that discovery disputes and motions related thereto must limit accompanying briefs to no more than five (5) pages. *See Hon.* Catherine Henry, *Policies & Procedures*, U.S. Dist. Ct. for the E.D. Pa. (Jan. 31, 2025) https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/henpol.pdf.

Regardless, Plaintiff's request to compel documents fails on the merits. To the extent Plaintiff is moving to compel documents, it is Plaintiff that "bears the initial burden of showing the relevance of the requested information." *Leaphart v. Little*, No. CV 23-1062, 2024 WL 249008, at *3 (W.D. Pa. Jan. 23, 2024) (quoting *Morrison v. Phila Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)). As explained at length, Plaintiff cannot satisfy this initial burden.

**V.     Plaintiff is not entitled to attorneys' fees.**

Federal Rule of Civil Procedure 37(a)(5) allows the Court to award fees to the prevailing party in a dispute concerning a motion to compel. Whether granted or denied, the Court "must, after giving an opportunity to be heard, require" either the movant or the party opposing the motion to pay the "reasonable expenses incurred" in making the motion or opposing the motion

11

unless the motion was "substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(A), (B).

Non-Party Respondents likewise seek an award for costs and fees incurred in opposing this motion upon the Court's denial of the same. As the Court is aware, costs and fees must be awarded upon the denial of Plaintiff's purported motion to compel unless Plaintiff is able to demonstrate that the motion was substantially justified or other circumstances make the award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

In the event Plaintiff's purported motion to compel is granted, the Court should not award Plaintiff its costs and fees because Non-Party Respondents' "nondisclosure, response, or objection was substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii-iii); *see First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 29 (E.D. Pa. 2016) ("We find that Folino's nondisclosure and objections, while ultimately futile, were substantially justified given the breadth of First Niagara's request. While we do not begrudge First Niagara's broad discovery request, we understand how Folino could have interpreted such a request as overly broad, expensive, and burdensome, even if we do not agree with that interpretation. We will therefore deny First Niagara's request for fees and costs associated with its successful motion to compel."); *Hill v. Se. Pennsylvania Transp. Auth.*, No. CIV.A. 09-5463, 2011 WL 4809051, at *1 (E.D. Pa. Oct. 11, 2011) (denying fees to prevailing party disputing motion to compel because the parties "had a genuine dispute as to the scope of discovery.").

### III. CONCLUSION

Based on the foregoing, Respondents respectfully request that this Court quash each subpoena identified herein, or alternatively, enter a Protective Order.

                                  Respectfully submitted,

                                  STEVENS & LEE, P.C.

Date:  November 28, 2025         By:  *s/Elizabeth Ware*
                                            Elizabeth A. Ware, Esq.
                                            Attorney I.D. No. 312046
                                            111 North Sixth Street
                                            Reading, PA 19601
                                            (610) 478-2210
                                            Elizabeth.Ware@stevenslee.com

                                            *Counsel for Whitehall Manor, Inc., Saucon Valley Manor, Inc., Brookside Commercial Construction Co., Inc., Pennsylvania Venture Capital, Inc., and Nimita Kapoor Atiyeh*

## **CERTIFICATE OF SERVICE**

I, Elizabeth A. Ware, Esq., hereby certify that the foregoing document was electrically filed and served upon all counsel of record via the Court's CM/ECF system.


Date:  November 28, 2025                             *s/Elizabeth Ware*
                                                     Elizabeth A. Ware